MATHEWS v. THE CITY OF KANSAS, *Appellant.*

1. **Mistake:** RECOVERY. Ordinarily an action cannot be maintained upon the ground of plaintiff's mistake alone, unless the recovery which is sought would leave the defendant in *statu quo*, or unless defendant has been guilty of fraud, or misrepresentation, or would secure some unconscionable advantage by withholding the money.

2. ———: TAXES: COLLECTOR: PAYMENT ON WRONG LAND. ͅTaxes on real property are assessed against the land, and not against the owner. When they become due, it is the duty of the owner to pay the tax assessed on the land as such, and where one pays the taxes on certain described land or lots designated by him as his, and requests and receives the receipt of the collector therefor, he cannot afterward recover the amount on the ground of mistake. It would be otherwise where the owner or his agent trusts to the collector to look up the numbers, which the collector undertakes to do, and furnishes the wrong numbers, and payment is made upon the belief of their correctness.

3. ———: ———: ———. The collector acts for the public in the collection of the revenue. The mistake of the tax-payer, himself, should not imperil this fund, and where one lies by for four years after making such mistake before demanding a rectification, he should, at least, come with clearest equity.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*R. H. Field* with *Wash Adams* for appellant.

There was mistake on the part of respondent only in

paying the taxes, and none on the part of appellant in receiving them. If appellant should re-pay the taxes, it cannot be placed in *statu quo* as to the taxes against the lots, and the judgment should be reversed. *Jiska v. Ringold Co.*, 57 Iowa 630; Laws of Mo. 1875, § 27, p. 226; *U. S. Bank v. Bank of Ga.*, 10 Wheat. 333, 358; *Boas v. Updegrove*, 5 Barr 516; *Guild v. Baldridge*, 2 Swan (Tenn.) 303; Story Eq. Jur., §§ 147, 148; Cooley on Tax., 567; *Taylor v. Commissioners*, 3 Pen. & Watts (Pa.) 112; *Espey v. Allison*, 9 Watts 462. There was no mutual mistake, and it is only in such case that the legal right of restitution prevails, regardless of where the loss falls. *Duncan v. Berlin*, 5 Rob. (N. Y.) 468; *Paulison v. Van Iderstine*, 28 N. J. Eq. 306; *Luddington v. Ford*, 33 Mich. 123; *Evarts v. Stegar*, 5 Ore. 147; 71 Mo. 563. The taxes were a charge only against the lots, and it was no concern of the collector to whom they belonged.

*Lathrop & Smith* for respondent.

If the evidence establishes a mutual mistake of fact, respondent is entitled to recover. *Koontz v. Bank*, 51 Mo. 275; *Harris v. Board of Education*, 3 Mo. App. 570; *Budd v. Eyermann*, 10 Mo. App. 437; *Allen v. Mayor*, 4 E. D. Smith 404; *Deitrich v. Mayor*, 5 Hun 421; *Rheel v. Hicks*, 25 N. Y. 289; *Kingston Bank v. Eltinge*, 40 N. Y. 391; *Mayer v. Mayor*, 63 N. Y. 455. The fact that the taxes were a charge against the land does not affect the case. And, even if the purchaser of the lots applied to the collector and was informed there were no delinquent taxes against them, still the plaintiff would be entitled to recover. *Raley v. Guinn*, 76 Mo. 263, 275.

PHILIPS, C.—This action was begun in March, 1879, by respondent, Mathews, against the appellant, the City of Kansas. The petition alleged in substance that in January, 1875, the plaintiff was owing to the defendant taxes for the year 1874, assessed on certain lots of the plaintiff in said

city; that his agent, Harriman, for him, went to the collector's office, in said city, in January, 1875, to pay the taxes, and by the mutual mistake of the parties the said agent payed tax on other lots not belonging to plaintiff, which sum so paid he seeks to recover back. The answer is a general denial.

The plaintiff's evidence was to the following effect: "That respondent had a map containing a list of lots in the corporate limits of appellant, in King & Bouton's addition; that on this map were certain marks or characters which indicated the lots belonging to him; that this map was left with his brother A. B. Mathews or D. O. Smart, his banker, for their guidance in ascertaining his lots for the purpose of paying the taxes thereon; that his said brother procured Harriman in January, of the year 1875, to pay the taxes due appellant on respondent's lots; that Harriman then went to Smart, the banker, for a list of respondent's lots to pay the taxes due on same; that by his or Smart's mistake, or both, the list of lots taken from said map were not those belonging to respondent; that Harriman took the list of lots so taken by mistake and gave it to appellant's collector, and told him to make out a receipt for the taxes due appellant upon said list of lots, and to make out the receipt to respondent as owner thereof; that the collector made out the receipt accurately as directed; that it contained the lots and only those on the list given him by Harriman, as aforesaid; that this mistake was not discovered until sometime in the year 1878, when the respondent found that the taxes which he intended to be and thought were paid, as aforesaid, were then still delinquent; that he has, since 1878, paid the taxes so due upon his lots, and that he demanded of appellant's common council the re-payment of the taxes so paid by Harriman under mistake, but appellant had failed and refused to re-pay them. Respondent admitted at the hearing of this cause, (as appears in the bill of exceptions,) that the taxes so paid by mistake were in the 1874 land tax-book of appellant entered

paid on date of payment, and that they never had been carried forward upon any subsequent tax-book; that these lots so paid on by mistake had changed hands since said payment and before the discovery of the mistake herein, and that they have not since discovering said payment was a mistake, belonged to the same parties who owned them at the date of such payment."

Defendant, at the close of plaintiff's evidence, demurred thereto. The court refused the instruction. Defendant then introduced as a witness the collector, who testified substantially that he did not pretend to know who was the owner of real property on which taxes were assessed; that it was not the custom in the office in receiving taxes to make inquiry who is the owner; the taxes upon real estate being against the land itself, the receipts are made out to those paying in whosever name the party paying directs. In this particular case Harriman paid this tax. Witness did not remember that Harriman told him whose property it was, although he may have done so; that he did not care to inquire or know. On cross-examination he stated that he knew that Harriman was a tax-paying agent, and that he was in the habit of giving receipts to such agents in the name of the owner when known; that Harriman must have given him the name of Mathews as the party in whose name the tax receipt was to be made out, and he so made the same in the name of Mathews as owner of the property described in the receipt.

The defendant again requested the court to instruct to the effect that under the evidence plaintiff could not recover. This the court again refused.

The plaintiff asked no instruction. The defendant requested the court to give the following declaration of law : " If the court believes from the evidence that the witness Harriman, or other person for plaintiff, intending to pay taxes due defendant upon certain lots belonging to plaintiff, but by mistake paid taxes to defendant upon other and different lots which did not belong to plaintiff instead,

without the fault or mistake of defendant, then plaintiff cannot recover back the taxes so paid, or any other amount, unless the court believes from the evidence that the defendant will not suffer the loss of such taxes." The court refused to give this instruction, and thereupon found the issues for the plaintiff and rendered judgment accordingly. From which defendant has appealed to this court.

I. It is rendered in a measure unnecessary to discuss the rights of a party to recover on a mistake committed solely by the actor, for the reason that the basis of recovery assumed in the petition is the mutual mistake of the parties. Ordinarily, when recovery is sought on the ground of complainant's mistake alone, the action is not maintainable if the defendant would not be left in *statu quo*, or unless he had been guilty of some fraud, misrepresentation or would secure some unconscionable advantage by withholding the money. In the instance of a mutual mistake the party paying thereunder may ordinarily recover without regard to the special equities involved as to where the loss will fall. In such case it is mainly a question of fact. The inquiry is, were both parties in error as to the real facts, and did both act thereon? The answer to this question controls the issue. *Waite v. Leggett*, 8 Cow. 195; *Kingston Bank v. Eltinge*, 40 N. Y. 396; *Koontz v. Cent. Bank*, 51 Mo. 275. Thus restrained by the pleadings, the question is chiefly one of fact. The facts in this record are quite clear and undisputed. Do they establish a mutual mistake or tend thereto? That the agent Harriman was under a misapprehension as to the lots on which he made the payment, is palpable enough. But I am unable to discover any mistake on the part of the collector representing the city. To rightly estimate and interpret the action of the collector in this transaction, regard should be had to the law under which he was acting. He was not acting *sui juris* but *virtute officii*. He was acting under a special statute which defined his duties, directed his acts and limited his powers. In contemplation of law, this was known to the agent,

Harriman, in dealing with the collector. Under the statute then in force the assessment of taxes on real property was not a personal tax against the owner. The assessment was made on the land itself by its numbers, regardless of who was its owner. It was not the duty of the collector to look up the owner or apply to him for the taxes. The tax by law became due and payable at certain prescribed periods, and it was the duty of the owner to go to the collector, or send some one, and pay this tax assessed on the land as such. So the collector in his testimony but stated a legal truth in saying that he had no concern as to who was the owner of a given lot or tract of land. He was receiving the tax imposed on the given lot as such. It may be conceded that if Harriman had gone to the collector and stated that he had come to pay the tax assessed on plaintiff's land, trusting to the collector to look up the numbers, and this the collector undertook to do, and furnished the wrong numbers, and the agent had thereupon made payment on the belief of the correctness of the lots, this would have been a case of mutual mistake, or at least one in which the plaintiff would have a clear equity of restitution. But the proof here is that without any word or act of the collector inviting thereto, the agent of plaintiff, not depending on the collector for the land assessed against his principal, presented his own prepared list to the collector "and told him to make out a receipt for the taxes due upon said list." In such a case the collector had to look simply to the numbers of the lots thus furnished to ascertain the amount of taxes assessed thereon. This he did as invited by the plaintiff, and received the money without question, as it was due the city. Where is the evidence in all this to give color even to any mistake or misrepresentation as to any material fact on the part of the collector? He was pursuing the statute receiving the tax due on the lots as such, regardless of who the owner was. The money received was justly owing to the city, was a charge on the lots, and,

therefore, it cannot be affirmed that it is unconscionable for the city to hold it.

Counsel refer us to a number of authorities to support the judgment of the court below. But an examination of them discloses the fact that the mistake in question there was mutual, or the payment was demanded or invited, or induced by some act or word of the party to whom payment was made. Such was the case in *Griffith v. Townley*, 69 Mo. 13. The case of *Koontz v. Bank, supra*, clearly presented the question of a mutual mistake with the additional element that the bank presented the draft making demand of payment on the wrong party.

In *Allen v. Mayor of N. Y.*, 4 E. D. Smith 404, it is to be observed that the owner of the lot was notified by the defendant corporation that the assessment had been made on his lot. The court, in the course of the opinion, say: " The mistake and belief were induced by the acts of the defendants themselves, the very parties who have authority to lay assessments, and who did lay the assessment therefor referred to, and who, therefore, knew what lots were affected thereby." Even there the court was divided in maintaining the action. Likewise in *Dietrich v. Mayor*, 5 Hun 421, the same fact in principle existed. The plaintiff presented to the water or tax commissioner the proper receipt or certificate and asked for the bill of taxes imposed upon *that lot*, and no other. The mistake was that of the clerk in giving her the bill on another lot. Under such a state of facts, the court very properly held that "she had a right to assume, under the circumstances, that her bill was in all respects correctly prepared, and that the only duty left undischarged was the payment of the sum set down as the tax imposed." This was clearly the instance of a mutual mistake primarily caused by the party sought to be charged. So in *Rheel v. Hicks*, 25 N. Y. 289, the plaintiff was induced to pay the money upon the express representation made to him that he was the father of an unborn bastard child. The woman proving not to be preg-

nant, he was clearly entitled to restitution for the money so paid. The case rested on the mutuality of the mistake.

The case of *Kingston Bank v. Eltinge, supra,* goes to great length in permitting the recovery where the money was paid under an execution sale. If the precise question were presented for decision here, I could not follow it. Though for the purpose of this case it is enough to say both parties there were, perhaps, under a mistake as to facts, and the majority of the court placed their decision upon that ground.

*Mayer v. Mayor,* 63 N. Y. 455, presents as strong a case for the respondent as I have found. The plaintiff was the owner of lot 28 on which there was an assessment for paving the adjoining street. There was a like assessment on lot 27 lying along side of lot 28, but not owned by complainant. But it is to be observed as the initial cause of the trouble, that the city, through its appropriate officer, notified the complainant of the assessment on lot 27, "stating the making of the assessment thereon, the amount, and that payment of the assessment would be expected by a time specified." On receipt of this notice he presented it to the collector and paid the assessment; and soon discovering the mistake, demanded rectification. Recovery might, perhaps, have been sustained on that state of facts, on the ground of mutual mistake, for the city had, through its mistake in the first instance, induced the error on the part of the complainant. The learned judge who delivered the opinion seems to have treated the case as if the mistake was that of the plaintiff alone, and, therefore, as it did not appear that the city had altered its condition in consequence of the payment on lot 27 instead of 28, and would, perhaps, suffer no loss by making restitution, it was a proper condition of affairs for an application of the rule that the loss should fall on him who first occasioned the mistake. If the principle invoked in that case were applied to this, the plaintiff could not recover. For it is apparent, both from the facts proven at the trial as also from inferences proper

to be drawn from the known provisions of the revenue law, both municipal and state, that the defendant's condition and rights toward the lots on which plaintiff, by his own mistake, made payment, were thereby entirely changed at the time this action was brought. The taxes were marked paid on the tax-book. They were not carried forward in the following tax years; they were not declared delinquent, and passed in the meantime into the hands of other parties. Whether the taxes might be enforced yet, or whether the property had passed into the hands of innocent purchasers, are questions, perhaps, not so presented in this record as to be accurately determined in this controversy. But enough is fairly inferable from the record and the known operation of certain provisions of the revenue laws, to indicate that an attempt of the city to enforce the collection of what would have been its dues but for the mistake of plaintiff's agent, would be attended with litigation of most doubtful issue. *Jiska v. Ringgold Co.*, 57 Iowa 630; *Guild v. Baldridge*, 2 Swan (Tenn.) 295.

The supreme court of Pennsylvania through so eminent a jurist as Gibson, C. J., held that where a *terre tenant* paid off an execution under a mistaken apprehension that it was a lien on the land, the plaintiff in the execution could retain it. It was not unconscionable in him to retain it, because the money was justly due on his judgment and there was no mistake committed by the party receiving the money. To entitle a party to recover money under such circumstances the receiver must be placed in the same position he was in at the time of payment, and if delay in collecting his dues would ensue, the party causing it by his mistake must bear the loss. *Boas v. Updegrove*, 5 Barr 516; *Espy v. Allison*, 9 Watts 462.

II. There is this further consideration of much weight in the determination of this case. The collector in such matters is acting for the public. The constituency are deeply concerned in the prompt collection of the revenues. The healthful maintenance and efficiency of the local gov-

ernment depend in large measure upon the timely collection of its revenues. The mistake of the tax-payer himself ought not to imperil this fund. Such property in our growing communities is constantly changing ownership. The collector's books are the sources of information, not only to the public dealing with the property, but to the municipal authorities themselves charged with the duty of the prompt collection of the revenues. A party who, like this plaintiff, lies by for four years after making the mistake before he demands a rectification, should at least come with clearest equity and pursuasive proof.

*Taylor v. Commissioners,* 3 Pen. & Watts (Pa.) 112, is quite like the case under consideration, and is, in my opinion, conclusive against the position of the respondent. The plaintiff paid tax on the wrong land without the fault of the collector. The court, after declaring that the party may, in all such cases, receive and hold money with a good conscience when it is justly due him, where he employs no deceit or unfair means in obtaining it, say : " It is not pretended that the money was unfairly received by the county. It was justly due to the county, and ought to have been paid by some person. Lands are often assessed in the name of those who happen not to be the owners at the time. If they have been the owners at any previous period, the assessments are good." In this State (Missouri) the assessments are good no matter who owns the land. Indeed, it is not usual to inquire of a person who comes forward to pay the taxes on a particular tract of land mentioned by him in what character he wishes to pay, whether as owner or as agent, and under what title. It is a matter of no concern to the county under what character, title or claim he wishes to pay the taxes, for as they are due, the proper officer may, with great propriety, receive them of any one and the first who appears to pay.

The petition, in our opinion, is not sustained by the proofs, and the facts being undisputed, the judgment of the circuit court is reversed. All concur.